IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| TAMARA PAVLOCK, | CIVIL DIVISION |
| Plaintiff, | Case No. 2:21-cv-215 |
| v. | |
| PITTSBURGH TECHNICAL COLLEGE, | |
| Defendant. | |

**COMPLAINT AND JURY DEMAND**

A.   *Preliminary Statement*

1. The plaintiff Tamara Pavlock brings this action under the Americans with Disabilities Act of 1990 (the "ADA"), 42 U.S.C. § 12101 *et seq.,* to redress violations of her right to be free from employment discrimination based upon her disability. Because of the violations described herein, this Court is also empowered to exercise pendant jurisdiction pursuant to the Pennsylvania Human Relations Act ("PHRA"), 43 P.S. § 951 *et seq.* A jury trial is demanded.

B.   *Jurisdiction*

2. The jurisdiction of this Court is invoked pursuant to 42 U.S.C. § 12117(a), 28 U.S.C. § 1331 and under the doctrine of pendant jurisdiction.

3. On or about December 3, 2020 the plaintiff filed a timely charge alleging discrimination with the Equal Employment Opportunity Commission ("EEOC"), docketed at 533-2021-00390. This charge was simultaneously cross-filed with the Pennsylvania Human Relations Commission.

4. The EEOC issued a Notice of Right to Sue dated January 21, 2021.

5. The plaintiff filed this complaint within 90 days of receipt of the Notice of Right to Sue.

C. *The parties*

6. The plaintiff is an adult individual who resides at 64 Wenzell Place, Pittsburgh, PA 15219 (Allegheny County).

7. The defendant, Pittsburgh Technical College is an entity doing business in the Commonwealth of Pennsylvania, and, specifically, in this district. The defendant maintains a place of business at 1111 McKee Road, Oakdale, PA 15071 (Allegheny County).

8. At all times material, the defendant employed more than fifteen employees.

9. The defendant was the plaintiff's employer and is an employer within the meaning of the ADA, 42 U.S.C. § 12111(5).

D. *Factual Background*

10. The plaintiff worked for Pittsburgh Technical College ("PTC" or "the company") as an Adjunct Instructor from January 2018 until October 12, 2020, at which time her employment was terminated.

11. PTC is a private college.

12. The plaintiff's duties included teaching graphic design and education classes.

13. During her employment, PTC's management considered the plaintiff to be a good and productive employee who consistently met or exceeded expectations.

14. The plaintiff has a disability as defined by the Americans with Disabilities Act ("ADA") and/or was perceived by the employer as having a disability. Specifically, she has Dermatomyositis, an uncommon autoimmune disease marked by progressive muscle weakness and skin rash. Other organs may be affected as well, including the lungs and digestive track.

There is no cure for this disease.  Dermatomyositis is a physical and/or mental impairment that substantially limits one or more of the major life activities of the plaintiff.  She was diagnosed with Dermatomyositis in approximately 2009.

15.     When the plaintiff began her employment with PTC she was a part-time instructor, teaching one or two classes a quarter.

16.     The plaintiff made requests from time to time to have her course load increased to four classes per quarter.

17.     In March 2020, PTC started conducting classroom instruction remotely, due to the emerging Covid-19 pandemic.

18.     On April 15, 2020, Brian Maitland, Academic Chair for the School of Design, decided to assign the plaintiff two additional classes to teach, bringing her total to four classes a quarter.  The Summer 2020 quarter started on May 13, 2020 and ended on June 17, 2020.  He also asked if the plaintiff would be interested in a full time position and she said yes.  Maitland said that he had to check with his supervisor first.  About a day later he told the plaintiff that the full time position would have to wait until "we're back on campus".

19.     The plaintiff's performance during the Spring 2020 quarter was very good.

20.     Maitland received a promotion to Vice President of Operations and was to start in his new position on August 12, 2020.  In email exchanges with the Maitland, the plaintiff advised him that she was going to apply for his position.  He told her that he would give her a reference for the position.  Although she applied for the job, she learned in early July 2020 that she was not the candidate selected.

21.     The Summer 2020 quarter started on July 23, 2020 and ended on October 8, 2020.  The plaintiff again had a schedule of 4 classes.

22. In early August, 2020, Mark Bellemare, Program Coordinator/Hospitality Management, sent an email to all faculty and administrative personnel regarding a blood drive and other volunteer efforts. The plaintiff responded to the email stating that she could not donate blood because she has an autoimmune blood disorder, but that she was willing to support the other volunteer efforts, including providing art supplies and a donation. Instead of replying just to Bellemare, the plaintiff inadvertently responded "to all", meaning that everybody at PTC received her email disclosing her disability. The plaintiff did not realize it at the time, but her fortune at PTC was about to change dramatically for the worse.

23. On or about August 12, 2020, Lauren Zito was formally appointed as the new Academic Chair for the School of Design and Media Arts and became the plaintiff's direct supervisor.

24. The plaintiff got an eye infection in August. Towards the end of the online class on August 12, 2020, the plaintiff started to experience severe vertigo and had to excuse the class ten minutes early.

25. On August 14, 2020, the plaintiff sent Zito a text notifying her that she had to cancel class. She told Zito that she had an eye infection that was giving her vertigo. The plaintiff also advised Zito that she would reschedule the class in the near future, which she did.

26. On August 17, 2020, the plaintiff sent a text advising Zito that her sense of taste was "off", so she was going to get a Covid test and that the vertigo was gone; "Don't worry new boss…Everything will be fine".

27. Around this time, the plaintiff started noticing that other faculty and administration personnel were not responding to her inquires. For example, she sent an email to Shawn Moody, an instructor, to discuss a course that had not been taught previously and was not

ready yet. He did not respond. She sent an email and a text message to Alicia Cerillo, an instructor, and Zito regarding a question about a tutor, but did not get a response. The plaintiff even called Cerillo about the issue and did not get a return call.

28. The plaintiff also noticed that she was not getting emails about upcoming faculty meetings, which were typically held on a routine basis.

29. The plaintiff also realized that she was not being asked to attend teaching demonstrations. A teaching demonstration is for individuals who are applying for a teaching position. It is typically a fifteen-minute demonstration during which the candidate presents a portion of a class to the faculty members who then critique the presentation. The plaintiff was not notified of these teaching demonstrations and therefore was not able to participate.

30. On August 25, 2020, the plaintiff saw that PTC was advertising for a new graphic design adjunct instructor. At that point, the plaintiff was the only graphic design adjunct instructor.

31. She brought up the issue with Zito during a telephone conversation that evening. She asked about the posting for a new design instructor and whether that was going to impact her ability to continue to teach four classes a semester. Zito told the plaintiff not to worry and that she would still be teaching when the October quarter began. Zito said that she wanted to hire another adjunct in case the plaintiff "got sick". After saying that, Zito immediately tried to back peddle and said, "Well, any adjunct could get sick; we just need to have a back up".

32. The plaintiff was still not getting any information regarding department meetings. She sent a text to Zito on Monday morning, September 21, 2020: "Hey good morning have you and [sic] decided on department time meetings". Zito responded: "Haha no. Everones [sic] schedule is so all over the place". This seemed curious because, to this point, Zito had never

inquired about the plaintiff's schedule/availability for department meetings. The plaintiff responded, "OK no worries I just don't wanna miss anything." Zito replied, "Still working that out. Lol You're good."

33. Later that day, the plaintiff found out that she was going to be assigned only two classes instead of four classes for the upcoming Fall 2020 quarter, which was scheduled to begin on October 22, 2020. The plaintiff sent a text to Zito at 5:48 pm: "I'm very confused. I've got good reviews. The students love me why am I dropping down to two courses … Is there anything I can do to change the powers that be minds? The students I have now really want me to continue with them".

34. Zito responded five and a half hours later, at 11:14 pm: "I don't think that is changeable right now but we can certainly meet on Wednesday to chat about it. I'm booked solid Tuesday".

35. Zito did not contact the plaintiff on Wednesday, September 23, 2020, so the plaintiff sent her and Maitland an email. In the email, she raised several issues, including the reduction in her assigned course load for the Fall quarter, whether her calling off sick in August was a factor in deciding to reduce her schedule and other concerns about her job. Zito did not respond and did not otherwise reach out to the plaintiff. Maitland responded a week or so later with an email that stated that he was no longer involved with issues relating to the education side and that he could not help her. He told the plaintiff that Zito was her supervisor and that she was the one who could provide her the answers she was seeking.

36. Unbeknownst to the plaintiff, PTC hired two new adjuncts for the plaintiff's department. Further, PTC rehired Tim Ankeny. He used to work for PTC as a full time instructor and had retired. He was rehired as an adjunct.

37. Towards the end of September 2020, the plaintiff received the official schedule for the upcoming Fall quarter, which confirmed that Zito had assigned two of the classes that the plaintiff had taught to the new adjuncts. However, the plaintiff was still assigned to teach two classes, which she looked forward to doing.

38. On Friday, October 9, 2020, the plaintiff attended a department meeting. Afterwards, Zito asked the plaintiff to meet her on Monday, October 12. Zito said that the purpose was to answer more fully certain questions that the plaintiff had asked during the department meeting.

39. On Monday, October 12, 2020, the plaintiff signed into the BlackBoard app to meet with Zito via video. When she was connected, Zito was not yet in attendance, but Nancy Starr, from Human Resources, was present. At this point, the plaintiff knew that the purpose was not to discuss what had gone on during the department meeting, but rather involved her employment. The plaintiff asked Starr what was going on, but before she got any answers, Zito joined the meeting. Starr then told the plaintiff "we're not bringing you back" for the Fall quarter (despite the fact that she was on the schedule). Zito and Starr said that the reason was that "we've had complaints". They refused to identify the "complaints" they had allegedly received. They further intimated, but did not elucidate, that part of the reason was that the plaintiff had been "unprofessional". However, they refused to provide any details despite the plaintiff's repeated questions.

40. Before the termination meeting, the plaintiff had not been advised that there were "complaints" about her teaching or told that any of her conduct was somehow "unprofessional". In other words, she did not receive any disciplinary notices or write ups for any alleged misconduct.

41. The reasons given for the plaintiff's termination was nothing more than a pretext and the real reason was because of her disability and/or PTC's perception that she had a disability. As detailed above, Zito told the plaintiff that she wanted to hire another adjunct instructor "as a backup" in case the plaintiff "got sick". Obviously, the plaintiff's health was very much on her mind. In any event, Zito's statement to the plaintiff was not true; Zito intended to and did hire the new adjuncts, not as a "backup", but instead to replace the plaintiff because she either knew about the plaintiff's disability or believed that the plaintiff had a disability.

## FIRST CAUSE OF ACTION

42. The plaintiff has a disability and thus is protected against discrimination under the ADA.

43. The plaintiff was qualified for her position.

44. The plaintiff was able to perform her position with or without a reasonable accommodation.

45. Despite her qualifications, the plaintiff was terminated. The reasons given for discharge were a pretext.

46. At all ties relevant, the defendant knew of the plaintiff's disability and/or regarded the plaintiff to be a disabled individual.

47. The defendant's violation of the ADA was committed with intentional or reckless disregard for the plaintiff's federally protected right to work in an environment free of discrimination.

## SECOND CAUSE OF ACTION

48. The preceding paragraphs are incorporated herein by reference as if they were set forth at length.

49. The defendant terminated the plaintiff's employment and otherwise discriminated against her in the terms and conditions of her employment because of her disability, in violation of the PHRA, 43 Pa. C.S. § 951 *et seq.*

WHEREFORE, the plaintiff respectfully requests judgment be entered in his favor and against the defendant and that the defendant be required to provide all appropriate remedies under the ADA and the PHRA, including back pay, front pay, compensatory damages, punitive damages and attorney's fees and costs.

Respectfully submitted,

*/s/ Michael J. Bruzzese*
Michael J. Bruzzese
Pa. I.D. No. 63306

2315 Koppers Building
436 Seventh Avenue
Pittsburgh, PA 15219

(412) 281-8676

Counsel for the plaintiff

Dated: February 15, 2021